UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10090-WGY |
| MICHAEL WHITMORE | ) ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS TANGIBLE EVIDENCE OBTAINED AS A
RESULT OF AN ILLEGAL MOTOR VEHICLE STOP AND SEARCH**

The United States of America opposes the defendant's motion to suppress because the seizure at issue was a valid investigative detention under Terry v. Ohio, 392 U.S. 1 (1968). In this case, a federal grand jury has returned a one-count Indictment against the defendant, Michael Whitmore ("Whitmore"), charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In his motion, the defendant seeks to suppress evidence – including the unlawfully possessed firearm – obtained during the course of the stop of the defendant's automobile by a police officer. The traffic stop was justified because the officer saw the defendant commit two driving infractions. The officer's subsequent pat frisk of the defendant and search for weapons under the defendant's car sear was justified by specific observations made by the officer: the officer saw the defendant slouch down as if to put something under the seat of the car and observed the defendant to be extremely nervous during their interaction. Moreover, the stop occurred in a high crime area that had experienced recent incidents of gun violence. Finally, the officers assessment of the defendant was informed by prior dealings with the defendant and knowledge of the defendant's gang affiliations.

I. **FACTS**

On September 27, 2003, Boston Police Officer Brian Smigielski observed the defendant in the vicinity of the Warren Gardens housing development, which Smigielski knew to be a high crime area plagued with drug trafficking and recent gun violence. Smigielski encountered Whitmore at an intersection and the two men made eye contact. Smigielski then followed the defendant a few blocks, during which time Whitmore committed two driving infractions. Smigielski also saw the defendant look in the rearview mirror several times, then slouch in his seat, again look in his rearview mirror, and, finally, lean forward as if to put something under the seat of the car.

In the two or three months leading up to the traffic stop, Smigielski had seen Whitmore in the vicinity of Warren Gardens numerous times. Smigielski, who has extensive experience at Warren Gardens, knew that Whitmore was not a Warren Gardens resident. He observed that Whitmore was invariably in the company of Warren Gardens residents he knew to be gang members, including young men Smigielski knew to be involved with guns and drugs. Therefore, as part of his community policing and intelligence-gathering efforts, Smigielski had approached Whitmore on several occasions and had engaged him in conversation. In fact, Smigielski had spoken to Whitmore twice in the week preceding the September 27 traffic stop.

In all his previous encounters with Whitmore, Smigielski observed Whitmore to be relaxed and affable. On each of those occasions, Whitmore spoke freely with Smigielski. In contrast, when he stopped Whitmore on September 27, Smigielski observed Whitmore to be extremely nervous and to exhibit a demeanor vastly different from that Smigielski had previously observed. Whitmore refused to make eye contact and was unable to maintain

conversation with the officer. This behavior, combined with Whitmore's apparently having concealed something beneath the car seat after seeing the officer and Smigielski's knowledge of Whitmore's gang affiliations, caused Whitmore to fear for his safety. He therefore removed Whitmore from the car and pat frisked him. Smigielski then looked under the driver's seat where he found a 9mm pistol loaded with four rounds of ammunition. He also found a sock containing five additional rounds of 9mm ammunition.

## II. ARGUMENT

The defendant contends that the police seized evidence in violation of Fourth Amendment rights and should thus be suppressed.[1] This argument is without merit. Based on the totality of the circumstances, Smigielski was justified, under Terry v. Ohio, 392 U.S. 1 (1968), in looking under the driver's seat of Whitmore's car. See Michigan v. Long, 463 U.S. 1032, 1047 (1983)(search of passenger compartment of car permissible under Terry if officer possesses reasonable belief based on specific and articulable facts that warrant the officer in believing that the suspect is dangerous and may gain immediate control of a weapon).

In Terry, 392 U.S. 1, the Supreme Court held that police officers may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat-down frisk for weapons. Id. at 22-23. To determine whether Smigielski was justified in looking under

---

[1] Because both the stop and search for weapons in this case are governed by the standard applicable to investigative detentions under Terry v. Ohio, 392 U.S. 1 (1968), the defendant's contention that the police lacked probable cause misses the mark. In Terry, the Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to effect an arrest." Id. at 22. As made clear by the Supreme Court, "the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989)(citation omitted).

the seat of Whitmore's car, his conduct must satisfy the familiar two-prong test "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 19-20; see also United States v. Sharpe, 470 U.S. 675, 682 (1985); United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990); United States v. Trullo, 809 F.2d 108, 111 (1st Cir.1987).

Regardless of Smigielski's subjective intent, the traffic stop was objectively valid because he observed Whitmore commit traffic infractions. See Whren v. United States, 517 U.S. 806, 812-13 (1996)(so long as officers have probable cause to believe a traffic violation has occurred, it is reasonable for them to stop an automobile and temporarily detain the driver, regardless of whether the traffic violation is merely pretextual).  Thus, the first prong of the Terry analysis is satisfied, and the only question in this case is whether the degree of the intrusion – Smigielski's search under the car seat – was reasonable.

In performing a Terry stop, a police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27.  To justify a stop under Terry's reasonable-suspicion standard, the government must show "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. The reasonable suspicion standard is not a stringent one:  "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989), quoting, INS v. Delgado, 466 U.S. 210, 217 (1984) (emphasis supplied). As the Terry Court explained,

> [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion, or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry, 392 U.S. at 27.

Courts will accord deference to the experienced perceptions of law enforcement officers, see Ornelas v. United States, 519 U.S. 940 (1996), so long as those perceptions are objectively reasonable. See Terry, 392 U.S. at 21. The officers' conduct must be viewed in the context of all the circumstances viewed together. United States v. Cortez, 449 U.S. 411, 417 (1981) ("the totality of the circumstances -- the whole picture -- must be taken into account"). "The circumstances `are not to be dissected and viewed singly; rather they must be considered as a whole.'" United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990), quoting, United States v. Trullo, 809 F.2d at 111; see also United States v. Walker, 924 F.2d 1, 3 (1st Cir. 1991) (court must view the circumstances relating to the stop and frisk as a whole). Moreover, "[t]he circumstances under which the officers acted `are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" United States v. Trullo, 809 F.2d at 112, quoting, United States v. Hall, 525 F.2d 857, 859 (D.C. Cir. 1976).

In Michigan v. Long, 463 U.S. 1032 (1983), the Supreme Court extended Terry's holding to include police searches of an automobile's passenger compartment. Under Long,

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

5

Id. at 1049 (citations and internal quotation marks omitted). Thus, the police may search a suspect's vehicle even though the individual is not under arrest because "[i]f a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested." Id. at 1049-50; see United States v. Cook, 277 F.3d 82, 87 (1st Cir. 2002)(if he has a reasonable basis to suspect that the subject of an investigatory stop may be armed, a police officer may undertake a search of the passenger compartment of any vehicle in which he is sitting); see also Turner v. United States, 623 A.2d 1170 (D.C. 1993)(gun found in the covered interior rear quarter panel of a hatchback car is admissible because the occupant of the car could gain immediate control of the gun).

In the context of automobile stops, the First Circuit has made clear that "slouching, crouching, or any other arguably evasive movement, when combined with other factors particular to the defendant or his vehicle, can add up to reasonable suspicion." United States v. Woodrum, 202 F.3d 1, 7 (1st Cir. 2000)(citations omitted); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000)(evasive behavior – even evasive behavior that at some level is ambiguous – is a "pertinent factor in determining reasonable suspicion"); United States v. Gilliard, 847 F.2d 21, 25(1st Cir. 1988) ("well-founded suspicion of drug activity, . . . coupled with Gilliard's nervous behavior, gave rise to a legitimate and specific concern for personal safety"). In Wardlow the Supreme Court found a Terry stop to be permissible based upon unprovoked flight where the only other basis for suspicion was the defendant's presence in an area known for heavy narcotics trafficking. 528 U.S. at 121.

The facts of this case make clear that the scope of the Terry stop was reasonably related in scope to the circumstances surrounding the stop. The basis for Smigielski's search under Whitmore's car seat was substantially more than a mere hunch and stronger than the basis for the

stop and frisk in <u>Wardlow</u>.  As in <u>Wardlow</u>, Whitmore was in a high crime area.  Also, as in <u>Wardlow</u>, Whitmore engaged in evasive behavior, albeit less evasive than the headlong flight by the defendant in <u>Wardlow</u>.  In addition, and as distinct from <u>Wardlow</u>, Smigielski had particular information about Whitmore that informed his reasonable suspicion that Whitmore might present a danger.  He had very recently encountered Whitmore and engaged him in conversation.  With that frame of reference, he was able to observe Whitmore to be extremely nervous and his demeanor to be vastly different from all previous encounters.  In addition, Smigielski's suspicions were further based on a reasonable inference, grounded in personal observation, that Whitmore had concealed something under the seat after becoming aware of Smigielski's presence.  Finally, Smigielski knew Whitmore to associate with gang members involved with guns and drugs.  Thus, Smigielski had somewhat more "specific and articulable" information upon which to base a <u>Terry</u>-type search of the vehicle than did the police in <u>Wardlow</u>.

 Based on the totality of the Smigielski's observations, he had reason to suspect that Whitmore might be armed and dangerous.  <u>See</u> <u>United States v. Lott</u>, 870 F.2d 778, 784 (1st Cir. 1989)(all facts gathered up to time of frisk must be considered in analyzing the propriety of search following <u>Terry</u> stop).  The gun seized by Smigielski was within Whitmore's reach and within the area the <u>Long</u> court stated could be searched during an automobile stop.  <u>Long</u>, 463 U.S. at 1049.

**CONCLUSION**

For the foregoing reason, the Court should deny the defendant's motion to suppress.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ John A. Capin

JOHN A. CAPIN
Assistant U.S. Attorney
(617) 748-3264

**CERTIFICATE OF SERVICE**

I, John A. Capin, Assistant U.S. Attorney, do hereby certify that I have, on July 13, 2004, caused a true and accurate copy of the foregoing to be served upon counsel for the defendant by filing the document with the Court electronically or, if counsel for the defendant is not registered with the Court's electronic filing system, by first-class mail, postage prepaid.

JOHN A. CAPIN
Assistant U.S. Attorney