UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) |
| --- | --- |
| v. | ) CRIMINAL NO. 04-10090-WGY |
| MICHAEL WHITMORE | ) |

### SUBSTITUTE MOTION TO SUPPRESS EVIDENCE WITH INCORPORATED MEMORANDUM OF LAW

Now comes the defendant, Michael Whitmore, and moves this Honorable Court to order that any and all evidence obtained by the government as a result of the unlawful stop of his vehicle and search of his person and vehicle on September 27, 2003, by an officer of the Boston Police Department be suppressed. In support of this motion, the defendant states the following:

1) that the stop of his vehicle was unlawful because the officer had no reason to believe that he had committed a motor vehicle violation;

2) that the stop of his vehicle was unlawful because the officer had no probable cause to believe that he had committed, or was committing a crime;

3) that the stop of his vehicle was unlawful because the officer had no reasonable and articulable suspicion that he had committed or was committing a crime;

4) that the search of his person was not supported by probable cause and did not fall within any of the exceptions to the warrant requirement;

5) that the search of his person was not justified by a reasonable and articulable suspicion, on the officer's part, that he was armed and dangerous;

6) that the search of his vehicle was not supported by probable cause and did not fall within any of the exceptions to the warrant requirement;

7) that the search of his vehicle was not justified by a reasonable and articulable suspicion on the officer's part that he was armed and dangerous; and

8) that for the reasons stated in paragraphs 1-7, the stop of the defendant's vehicle and the search of his person and vehicle were conducted in violation of the Fourth Amendment and must be suppressed.

## FACTS

The following statement of facts is a summary of the police report of Officer Brian M. Smigielski of the Boston police. The defendant makes no concession as to the credibility of this version of events:

At approximately 8:45 P.M. on September 27, 2003, while patrolling in the Roxbury section of Boston, Officer Smigielski saw a 1994 Toyota Corolla automobile make a turn onto Blue Hill Avenue without signaling. The Corolla, then, turned onto

Holborn Street, again without signaling. At the time of this second turn, the officer made eye contact with the car's operator, Michael Whitmore, whom the officer had spoken with twice during the preceding week in the Warren Gardens development. The officer followed Whitmore onto Townsend Street. He saw Whitmore look back at him repeatedly in the rear view mirror, and saw him slouch in the driver's seat, then lean forward. It appeared to the officer that Whitmore placed something under the seat. Whitmore then turned onto Humboldt Avenue, at which point the officer activated his blue lights and siren and pulled Whitmore over. The officer approached Whitmore and requested his license and registration. In contrast with his previous encounters with Whitmore, during which Whitmore seemed at ease with the officer, Whitmore appeared to the officer to be very nervous. When the officer asked him if he was "feeling O.K.," Whitmore responded, "I'm straight." The Officer walked to the back of the Corolla, at which point he again saw Whitmore slouch in his seat. The officer ordered Whitmore to stay still, then removed Whitmore from the car and frisked him. After placing Whitmore in his cruiser, the officer returned to the Corolla and looked under the driver's seat, where he saw a firearm. At that time, the officer requested assistance. After other police units arrived, Officer Smigielski asked Whitmore for his license to carry a firearm, and Whitmore said he did not have one. Whitmore was, then,

LAW OFFICES OF
HAROLD H. HAKALA
15 COURT SQUARE
BOSTON, MA 02108
(617) 742-7040

arrested. A 9mm hand gun containing four rounds was recovered from under the front seat of the Corolla, as well a sock containing five additional rounds.

## ARGUMENT

A search without a warrant is generally unlawful unless the search falls within one of the narrowly defined exceptions to the warrant requirement. *Minnesota v. Dickerson,* 508 U.S. 366, 372 (1993); *United States v. Woodrum,* 202 F.3d 1, 6 (1st Cir.2000). However, a police officer may be justified in briefly stopping an individual and carrying out a limited inquiry provided that the officer has a reasonable and articulable suspicion of criminal conduct. *Terry v. Ohio,* 392 U.S. 1 (1968); *Illinois v. Wardlow,* 528 U.S. 119, 123-24 (2000). The government does not claim that the search in this case was supported by probable cause or that it falls within one of the exceptions to the warrant requirement. Therefore, the issue whether the evidence must be suppressed is governed by *Terry* and its progeny.

The government correctly cites *Whren v. United States,* 517 U.S. 806, 813 (1996), for the rule that, when an officer has probable cause to believe a traffic violation has been committed, his stop of the automobile is valid regardless of whether the traffic violation was merely an excuse or pretext for the stop. However, *Whren* is inapposite here. Setting aside issues of credibility, the defendant does not contest that, if

LAW OFFICES OF
HAROLD H. HAKALA
15 COURT SQUARE
BOSTON, MA 02108
(617) 742-7040

the officer saw a traffic violation, as he says, the stop of the car was valid. It is the officer's frisk of the defendant's person and car following the stop that were unlawful. Although the Court held in *Whren* that a stop for a traffic violation is valid even if based on a pretext, it does not follow that a *Terry*-type frisk is lawful even if based on a pretext. To the contrary, the officer's subjective frame of mind does matter. According to *Terry*, it must be considered whether a mere hunch on the officer's part led to the search. *Terry*, 392 U.S. at 27. In addition, the officer's perceptions in light of his own experience and training are to be considered. *Id.*; *United States v. Stanley*, 915 F.2d 54, 56 (1st Cir. 1990). Both of these inquiries concern the officer's subjective perceptions.

In *Michigan v. Long*, 463 U.S. 1032 (1983) (which is also cited by the government) the Court states plainly that a search of the interior of an automobile based on *Terry* is permissible "if the police officer *possesses a reasonable belief* that the subject in question is armed and dangerous" (emphasis added). It should be assumed that this phrase is to be interpreted literally, and that (1) the officer must subjectively believe there is a danger, and (2) the belief must be objectively reasonable. Moreover, *Whren* does not contradict the Court's holding in *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979), that "[n]othing in *Terry* can be understood to allow . . . any search whatever for anything but weapons." The question whether a

search is for weapons or for something else can only be answered by drawing inferences regarding an officer's subjective intention.

In *United States v. Lott*, 870 F.2d 778 (1st Cir. 1989), the First Circuit addressed this issue as follows:

> Although *Terry* and *Long* speak in terms of an objective test ("reasonableness") for determining the validity of an officer's frisk for weapons, we do not read those cases as permitting a frisk where, although the circumstances might pass an objective test, the officers in the field were not *actually* concerned for their safety. Indeed, this point seems to be implicit in the Supreme Court's reasoning. *See, e.g., Long*, 463 U.S. at 1049, 103 S.Ct. at 3480 (a search for weapons is allowed "if the *police officer possesses* a reasonable belief") (emphasis added); *id.* at 1051, 103 S.Ct. at 3482 (police may search if "*they possess*" a reasonable belief) (emphasis added); *id.* at 1052 n. 16, 103 S.Ct. at 3482 n. 16 (in order to search, "*the officer must have* an articulable suspicion") (emphasis added); *Ybarra*, 444 U.S. at 93, 100 S.Ct. at 343 (a frisk is permitted by the officer when "*he reasonably believes or suspects*" the detainee to be armed) (emphasis added). An officer cannot have a *reasonable* suspicion that a person is armed and dangerous when he in fact has *no* such suspicion. Bolstering our conclusion that an officer must have an actual suspicion that weapons are present before a *Terry* search can be made are two further points. First, the Supreme Court and this court have consistently pointed to such facts. *See, e.g., Long*, 463 U.S. at 1036, 103 S.Ct. at 3473 (upon observing knife in car, officer frisked suspect and searched car for additional weapons); *Pennsylvania v. Mimms*, 434 U.S. 106, 107, 98 S.Ct. 330, 331, 54 L.Ed.2d 331 (1977) (per curiam) (officer performed *Terry* frisk fearing that bulge might be a weapon); *Williams*, 407 U.S. at 145, 92 S.Ct. at 1923 (officer was informed that suspect had a gun in his waist); *Terry*, 392 U.S. at 6, 88 S.Ct. at 1872 (officer feared the suspects might have a gun); *Sibron*, 392 U.S. at 46, 88 S.Ct. at 1894 (officer never suggested he searched out of a fear that suspect was armed and dangerous); *id.* at n. 4, 88 S.Ct. at 1874 n. 4 (same); *id.* at 64, 88 S.Ct.

at 1903 (finding a *Terry* frisk invalid in part because officer did not fear suspect was armed and dangerous); *id.* at 21, 88 S.Ct. at 1879; *United States v. Trullo*, 809 F.2d 108, 110 (1st Cir.) (bulge in suspect's pocket), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *Ballou v. Massachusetts*, 403 F.2d 982, 985 (1st Cir.1968) ("the sole focus of suspicion here was that the suspects were armed"), *cert. denied*, 394 U.S. 909, 89 S.Ct. 1024, 22 L.Ed.2d 222 (1969). Second, where a search has been made without any legal basis, we do not think that an ex post facto reconstruction based upon an argument of objective reasonableness can validate the search. While other officers might have viewed the situation differently, it is the conduct of these officers which we are judging.

As recently as *United States v. Nee*, 261 F.3d 79, 86 & n.6 (1st Cir. 2001), the First Circuit assumed *in dictum* that *Lott* is still good law even in view of *Whren*, and that an officer must subjectively have concern for his safety in order for a *Terry* frisk to be justified.[1] Further, the court's decision in the even more recently decided *Bolton v. Taylor*, 367 F.3d 5 (2004) does nothing to contradict *Lott*. In *Bolton* the court emphasized that in regard to a *Terry* stop - as opposed to a frisk - the issue is what information, objectively, was available to support a reasonable suspicion of a crime. However, a search of the person or his property is more intrusive than a mere stop for questioning. Therefore, the courts have held that a frisk on less than probable cause can be justified only for the purpose of assuring the officers' safety. On point is *United States v.*

---

[1] The First Circuit declined to consider whether *Lott* was no longer good law due to the government's failure to raise the issue before the District Court.

LAW OFFICES OF
AROLD H. HAKALA
15 COURT SQUARE
BOSTON, MA 02108
(617) 742-7040

8

*Beaudoin*, 362 F.3d 60, 67 (2004), where the court states that "[w]hen the officer suspects a crime of violence, the same information that will support an investigatory stop will, without more, support a protective search. Conversely, when an officer conducts a 'Terry frisk' with the object of discovering contraband rather than weapons, the fruits of the search must be suppressed." *Id.*, citing *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Based on this precedent it is clear that an officer's intent in conducting a frisk is relevant.

Here, the officer cannot possibly have subjectively feared for his safety at the time that he searched Whitmore's car. At that point, the officer had already removed Whitmore from his vehicle, frisked him for weapons, and placed him in the officer's cruiser. The officer cannot have feared that the possibility of a gun under the seat of Whitmore's car posed any threat to his safety. Moreover, even viewing these circumstances from an objective viewpoint, the officer had no justification for a search for a possible weapon that would be out of the suspect's reach, since such a weapon would not pose a danger to the officer in these circumstances. The Court's holding in *Michigan v. Long, supra,* is instructive on this point. As stated, in *Long*, the Court held that a search of a vehicle is lawful "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken

together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain *immediate* control of weapons" (emphasis added). *Id.* at 463 U.S. 1049, quoting from *Terry*, 392 U.S. at 21.

Because the officer could not have possessed a reasonable fear for his safety in the circumstances of this case, the evidence must be suppressed.

## CONCLUSION

The stop of the defendant's vehicle and the search of his person and property were conducted in violation of his rights under the Fourth Amendment, and all of the fruits of this activity must be suppressed.

Respectfully submitted,

*Harold H. Hakala*
Harold H. Hakala
15 Court Square
Boston, MA 02108
(617) 742-7040
BBO# 216940

## CERTIFICATE OF SERVICE

I, Harold H. Hakala, counsel for the Defendant, hereby certify that I have served John A. Capin, Assistant U.S. Attorney, with a copy of the foregoing Substitute Motion to Suppress with Incorporated Memorandum of Law this 21st day of July, 2004, in hand.

*Harold H. Hakala*
Harold H. Hakala